STACY, C. J., took no part in the consideration or decision of this case. *Page 64 
In the Pridgen case it was alleged that Pridgen, a young man in the employ of the Carolina Delivery Service Company, was seriously and permanently injured on 21 December, 1929, resulting from a collision between a truck driven by him and the train of defendant railroad. It was further alleged that the injury occurred in the city of Kinston where the track of defendant crossed at grade Vernon Avenue in said city. It was further alleged that the injury occurred at 6:30 o'clock in the morning when it was dark, and that the defendant backed a train over said crossing without a watchman or light upon the train or box car, and at a rate of speed in excess of five miles per hour in violation of an ordinance of the city of Kinston. In the ninth paragraph of the complaint the coplaintiff, United States Fidelity and Guaranty Company, alleges that it insured the Carolina Delivery Service Company, the employer of Pridgen, "against liability for compensation to its employees, and as insurance carrier of said employee under the provisions of said Compensation Act has paid the plaintiff Pridgen, and is now paying the plaintiff Pridgen, compensation for loss of services in compliance with said act. That by virtue of said act, and especially section 11 thereof, said United States Fidelity and Guaranty Company has become subrogated to the right of recovery of the plaintiff Pridgen against the defendant for damages, as hereinbefore alleged, until said United States Fidelity and Guaranty Company shall be repaid whatever amount, together with attorney fees and costs, to be fixed by the Compensation Commission as provided by said act, as it shall have paid out on account of injuries sustained by said Pridgen — and said Pridgen is entitled to whatever amount he may recover in this action over and above what is to be paid said United States Fidelity and Guaranty Company."
The defendant filed an answer denying any and all acts of negligence and pleading contributory negligence.
Answering the allegations of the complaint with reference to the rights of the United States Fidelity and Guaranty Company, the defendant says: "It has not sufficient knowledge or information to form a belief except as alleged by the plaintiff, and the defendant calls upon the plaintiffs to make due proof of the relation of the plaintiff, United States Fidelity and Guaranty Company, to the plaintiff, Henry Pridgen, in respect to the matters complained of in this action; and further, to disclose to the court the amount that it is now paying the plaintiff, Henry Pridgen, in compensation for loss of services and the total amount of compensation which it is legally required to pay." In the second action the Carolina Delivery Service Company alleged that it owned *Page 65 
the truck in which the plaintiff, Pridgen, was riding at the time of the injury, and that said truck was totally, destroyed by the negligence of defendant, and prayed damages in the sum of $1,150. The defendant filed an answer denying all allegations of negligence.
The cases were consolidated at the trial, and issues of negligence, contributory negligence and damages were submitted in the two cases. The jury awarded Pridgen the sum of $13,083.33, and also awarded the Delivery Service Company the sum of $300 for damage to the truck.
In the Pridgen case it was adjudged: "It further appearing to the court that the plaintiff, United States Fidelity and Guaranty Company, has made payment to the plaintiff, Henry B. Pridgen, pursuant to the aforesaid award of the Industrial Commission; and, it further appearing to the court that under the provisions of section 11 of the Workmen's Compensation Act the plaintiff, United States Fidelity and Guaranty Company, insurance carrier for the said employer of the plaintiff, Henry Pridgen, is subrogated to the rights of said plaintiff and his employer, Carolina Delivery Service Company, to the extent of such amount as it shall have paid or will pay under the said award of the Industrial Commission of North Carolina, to the plaintiff, Henry B. Pridgen, including the amount of any hospital bill, medical or other expenses, as set out in said award and as provided by the aforesaid Workmen's Compensation Act. It is, therefore, ordered and adjudged that the interest of the plaintiffs, United States Fidelity and Guaranty Company and Henry B. Pridgen, as between themselves in and to this judgment shall be as follows: That said United States Fidelity and Guaranty Company shall be entitled, out of the proceeds of this judgment when collected, first to be reimbursed for any and all sums and amounts which it may have paid out to the said Henry B. Pridgen, or for his benefit, under and pursuant to any award of the Industrial Commission, including the final award in said case, plus such amounts as are paid by it for reasonable expenses and attorney's fees, when approved by the Commission, and the said Henry B. Pridgen shall be entitled to the balance of said judgment, when collected."
The evidence tended to show that on 21 December, 1929, the plaintiff was working for the Carolina Delivery Service Company and engaged in hauling by truck moving picture films from Beaufort to Raleigh. The tracks of defendant cross Vernon Avenue in Kinston at grade. On each side of Vernon Avenue, but not on the right of way of defendant, are certain factory and other buildings. The plaintiff, Pridgen, driving the truck and traveling eastwardly, approached said crossing. He said: "I slowed down to a standstill and looked both ways to my right and left, and then I just did creep on until I was struck by the train. . . . I *Page 66 
did not see the train until after I was struck. I did not hear any bell ring nor any whistle blow. I did listen and I looked. . . . I think it was a box car that struck me. There was no light on the box car. It was a shifting train. My lights on the truck were burning. I did not observe any watchman at all at the crossing, and there was no watchman there. No one at all gave me any warning of the shifting train. I did not see any light on the train or in the hands of any one before or after I was injured." Pridgen further testified that in his opinion the train was moving over the crossing between fifteen and twenty miles an hour. He further testified that it was dark at the time he approached the crossing. A witness for plaintiff, Pridgen, testified that the first track at the crossing, traveling east, is a sidetrack, and that it is about 55 feet from the center of the side track to the center of the main line track. He said: "If you should look north when you get in the open space between the first side track and the main line track you could observe a train all right and be able to stop if you had good brakes if traveling at a reasonable rate of speed before you reached the main line track. I think you could observe a train at that point between the first side track and the main line track at least a mile up the track looking north." The plaintiff was injured on the main line track. There was other testimony from witness for plaintiff that it is about 50 or 60 feet from the first side track to the main line track. Another witness for plaintiff testified that "after you approached this crossing going east, when you are within ten feet of the first side track, you can see 200 feet to the north up the main line, and on the right you can see all the way down about a quarter of a mile."
The defendant offered evidence tending to show that it was guilty of no negligence, and that the real cause of the injury was the contributory negligence and recklessness of the plaintiff, Pridgen.
From the judgment rendered the defendant appealed.
Several questions of law are presented by this appeal, to wit:
1. Can an injured employee, after receiving an award for such injury from the Industrial Commission, and an insurance carrier paying such award, maintain an action for damages against an alleged tort-feasor?
2. Were the cases properly consolidated?
3. Should the actions have been nonsuited? *Page 67 
4. Did the trial judge commit error in permitting counsel for plaintiff to argue to the jury that the plaintiff, Pridgen, would receive nothing unless the verdict awarded damages in excess of the amount paid by the insurance carrier?
The first question must be answered in the affirmative. Brown v. R. R.,202 N.C. 256; Phifer v. Berry, 202 N.C. 388. In the Brown case, supra, the Court said: "It is also provided by the statute that where an insurance carrier has paid the compensation awarded to the injured employee, or to his personal representative, the insurance carrier shall have the same right to maintain an action against the third person, as that conferred by the statute on the employer. In either case, the action is prosecuted not in behalf of the injured employee, or of the persons who are designated as beneficiaries of the recovery, under C. S., 160, but in behalf, primarily, of the employer or of the insurance carrier. The amount recovered is applied first to the reimbursement of the employer or of the insurance carrier for such sums as may have been paid by either of them to the employee or in case of his death to his personal representative. Only the excess, if any, is payable to the injured employee, or to such persons as may be entitled thereto." That is to say, the injured employee has no cause of action for the identical amount awarded and paid to him by the employer or insurance carrier, but if the damages exceed the identical amount so paid, the injured employee, or his personal representative in the event of death, is entitled to receive the excess. Moreover, in the case at bar in the ninth paragraph of the complaint the carrier alleged that it was only entitled to recover the amount actually paid by virtue of the award, and that any excess should be paid to the plaintiff, Pridgen. In effect, such allegation declares that the carrier is bringing the suit for its own benefit for the amount expended by it under the award and for the benefit of Pridgen for the excess. The defendant does not demur to the complaint or to said allegation, but calls upon the plaintiff in the action "to disclose to the court the amount that it is now paying the plaintiff, Henry Pridgen, in compensation for loss of services and the total amount of compensation which it is legally required to pay." Consequently, the defendant acquiesced in and adopted the theory of liability set up in the complaint.
The second question is also answered in the affirmative. Both cases grew out of the same injury and practically the same defenses were interposed. The general subject of consolidation is discussed by McIntosh North Carolina Practice and Procedure, pp. 536 and 539. In illustrating the application of the principle of consolidation, the author says: "When two or more plaintiffs brought different actions against a railroad *Page 68 
for damages growing out of the same negligent act, the actions were consolidated for convenience of trial," etc.
The third question must be answered in the negative. The defendant insists that the evidence of the plaintiff discloses beyond question that when the plaintiff reached the side track he had an unobstructed vision of more than a mile, and that notwithstanding such unobstructed vision, he moved on across the track for more than fifty feet to the main line track where the injury occurred. If nothing else appeared, the position of defendant would be sound and the plaintiffs ought to go out of court by virtue of application of the principles announced in Eller v. R. R.,200 N.C. 527, 157 S.E. 800, and the line of cases of which that case is typical. But something else does appear. There is evidence that the defendant was backing cars over the crossing in the night time without a light thereon or a watchman or flagman to give warning. Moreover there was evidence that the train was being operated at a speed in excess of that prescribed by a valid ordinance of the city of Kinston, and that no signal by bell or whistle was given by the approaching train. It has been held in many cases in this State that it is a negligent act to back a train over a crossing "without a light if it was dark, or without a flagman if it was not." Parker v. R. R., 181 N.C. 95, 106 S.E. 755.
The fourth issue must be answered in the negative. The record by which appellate courts are bound shows the following: "During the course of argument . . . by counsel for defendant, counsel . . . argued that the plaintiff, Pridgen, was not the real interested party; that Pridgen was paid by the insurance company under the Workmen's Compensation Act, and that the insurance company was the real interested party and the one pushing this suit. The above argument by counsel for defendant was made without objection of counsel for plaintiff. That thereafter in response to argument by counsel for defendant, . . . counsel for Pridgen, over the objection and exception of counsel for defendant, read to the jury sections 30 and 41 of the Workmen's Compensation Act, and stated to the jury that under the law that the insurance company would not be interested to a greater extent than a maximum sum of $6,000, . . . and that the insurance company could only be subrogated to a maximum of said amount, . . . and that anything recovered over $6,000 would not go to the insurance company, and that anything recovered over and above the amount paid by the insurance company under the law was the property of plaintiff, Pridgen. Counsel argued that plaintiff, Pridgen, was an interested party and an actual party, and was entitled to recover anything in excess of what the insurance company paid Pridgen, and receive nothing if nothing *Page 69 
in excess of what the insurance company had paid was recovered." It is manifest that counsel for all parties were debating before the jury the distribution of the proceeds of the recovery if damages were awarded, and the argument of counsel for plaintiff was in the nature of a reply to an argument proffered by the defendant. Consequently the defendant has no just ground for complaint.
There are certain other exceptions which have not been overlooked, but they do not warrant an upset of the judgment.
The defendant files a petition for a new trial for newly discovered evidence. In substance the newly discovered evidence is contained in the affidavit of G. W. Bray. This man was a witness for the plaintiff at the trial and testified unequivocally that the plaintiff Pridgen "worked for the Service Company at the same time I was. I know his reputation and it is good. . . . I know that the company employed Mr. Pridgen through me." In an affidavit filed 28 February, 1932, Bray swore "that at no time was Henry B. Pridgen so employed and he was never paid any sum whatsoever by this affiant or the company for services." It is obvious that the witness Bray in substance declares that his sworn testimony at the trial was false. The standards prescribed for determining whether the proposed newly discovered evidence will warrant a new trial are contained in Brown v. Sheets.197 N.C. 268, 148 S.E. 233. The proposed evidence tends only to contradict or impeach or discredit a former witness at the trial, and hence such evidence does not meet the test prescribed by law. If the alleged false testimony was the only evidence of the employment or the sole evidence supporting the cause of action, a different question would be presented. See McCoy v. Justice, 199 N.C. 602, 155 S.E. 452.
No error.
STACY, C. J., took no part in the consideration or decision of this case.