This is an action for actionable negligence, alleging damages, for alleged wrongful death. It was originally brought in the municipal court of the city of High Point, but a consent order was entered transferring it to the Superior Court of Guilford County. The defendant, Robert Company, Inc., entered a special appearance and moved that the action be dismissed as to it for want of proper service of process. This motion was sustained and an order entered to that effect. Service was duly had upon the other defendants, who filed answers. When the case came on for trial before his Honor, Luther Hamilton, judge presiding, each defendant demurred ore tenus
to the complaint and moved for judgment on the pleadings. The demurrers and motions were sustained, and judgment entered dismissing the action. To the ruling sustaining the demurrers and motions, and to the signing of the judgment dismissing the action, the plaintiff appealed to the Supreme Court.
The complaint alleges, in part: "That the said plans and specifications were approved and accepted by the defendant Marshall Field and Company, which in January, 1937, employed the defendant Southeastern Construction Company to erect and construct said wing or addition; that the latter company employed J. L. Coe to do the structural steel work on said addition, and the plaintiff's intestate at the time of his death was employed by said J. L. Coe and was engaged in putting steel columns in said addition to said mill. That the addition or wing to said mill was to be constructed of brick, supported by considerable structural steel; that on March 11, 1937, said construction had progressed to a point where most of the steel in the floor of the second story had been placed, and the north brick wall was about 8 or 8 1/2 feet high; that in order to place the steel beams or columns in position it was necessary *Page 57 
to use a form of derrick, consisting of a wooden pole about 35 feet long and about 16 inches in diameter, called a gin pole, which was held in position by guy ropes and braces; that near the top of this pole were two pulley blocks and near the bottom of said pole was what is called a winch, on which is wound the steel cable used in hoisting the steel columns; that on March 11, 1937, said gin pole was located just inside the north brick wall of said addition, near the northeast corner of same; that it was located near a window in the north wall, in which window it was necessary to place one of these steel columns; that about 12 or 15 feet from said window in the northwesterly direction from it was located the pole from which the power lines ran to the old transformer; that said power lines ran from said electric light pole to said old transformer diagonally across said brick wall at a point a few feet above said window; that about 9:30 or 10:00 o'clock a.m., on said day plaintiff's intestate and fellow employees were hoisting a steel column into position in the aforesaid window; that said column was picked up from the ground just inside the north wall of said addition; that plaintiff's intestate and two other employees were at said time engaged in turning the handle on said winch, which caused said steel column to be lifted from the ground and into place with the assistance of other employees, who guided it in its movement; that said steel column was about 30 feet long and weighed about 650 pounds; that when it had been partially raised so that it was clear of the ground it came in contact with one of said power lines, which was charged with about 13,200 volts of electricity, causing said electric current to run down the column and the cable supporting said column and into plaintiff's intestate, knocking him a distance of 6 or 7 feet, and instantly killing him. That there was no sign on said power lines of any kind to warn persons on the premises that they were uninsulated, or charged with electricity, or dangerous; that plaintiff's intestate had not been warned of the danger of said wires; that the condition of said wires and the danger inherent therein were well known to all the defendants; that each and every one of said defendants had the right and authority, and was under the duty to warn persons rightfully on said premises of the condition and danger of said power lines, and to use reasonable precautions to protect such persons from harm therefrom; that plaintiff's intestate was a poor, illiterate and ignorant Negro, and was ignorant of the fact that said wires were uninsulated and exposed and charged with a high voltage and very dangerous. That plaintiff's intestate's death was directly and proximately caused by the negligence and carelessness of the defendants, and each of them, in the following particulars:
"(a) In that said power lines were placed upon and allowed to remain upon said premises in an exposed condition and uninsulated and in this *Page 58 
condition were charged with a high voltage of electricity, when the defendants knew, or by the exercise of reasonable diligence should have known, that they were inherently dangerous, and would probably result in serious injury or death to persons working near them, and more particularly plaintiff's intestate. (b) In that said power lines were so located upon said premises as to be exceedingly dangerous, when charged with electricity, to persons working near them, and more particularly the plaintiff's intestate. (c) In that defendants placed no sign of any kind on said power lines or the poles supporting them to warn persons against danger therefrom, and in that defendants failed and neglected to warn in any manner plaintiff's intestate that said power lines were open and exposed and dangerous. (d) In that the current passing through said power lines was not cut off while persons were working so near them, and particularly while plaintiff's intestate and others were hoisting steel columns so near to said wires, and in that no attempt was made by any of the defendants to cut off or have cut off said current. (e) In that said wires or power lines were not constructed at a height and in such a manner as to not interfere with the construction of said addition to said mill and the persons working thereon. (f) In that the said power lines were not covered with nonconductible material. (g) In that the defendants did not complete construction of the new transformer stand and change the wires from the old transformer stand to the new one, where they would be out of danger, prior to the commencement of construction of said addition. All of which acts of negligence on the part of the defendants were the sole, proximate and efficient cause of the death of plaintiff's intestate."
Plaintiff excepted and assigned error: "That his Honor sustained the demurrer ore tenus to the complaint and motion for judgment on the pleadings of each defendant," and "That his Honor rendered and signed the judgment set out in the record," and appealed to the Supreme Court.
Did the court below commit error in sustaining the demurrer ore tenus to the complaint and motions for judgment on the pleadings made by each of the defendants? We think so under the facts and circumstances of this case.
In Leonard v. Maxwell, 216 N.C. 89 (91), citing authorities, it is stated: "The office of a demurrer is to test the sufficiency of a pleading, admitting, for the purpose, the truth of factual averments well stated *Page 59 
and such relevant inferences as may be deduced therefrom, but it does not admit any legal inferences or conclusions of law asserted by the pleader."
It is well settled that only objections apparent on the face of the complaint can be considered on demurrer.
N.C. Code, 1935 (Michie), sec. 160, in part, is as follows: "When the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured party had lived, have entitled him to an action for damages therefor, the person or corporation that would have been so liable, and his or their executors, administrators, collectors, or successors, shall be liable to an action for damages, to be brought within one year after such death, by the executor, administrator or collector of the decedent; and this notwithstanding the death, and although the wrongful act, neglect or default, causing the death, amounts in law to a felony. The amount recovered in such action is not liable to be applied as assets, in the payment of debts or legacies, except as to burial expenses of the deceased, but shall be disposed of as provided in this chapter for the distribution of personal property in case of intestacy."Curlee v. Power Co., 205 N.C. 644 (647). Nothing else appearing, there would be no question that the plaintiff stated a good cause of action against all of the defendants served.
N.C. Code, supra, sec. 8081 (r), in part, is as follows: "The rights and remedies herein granted to an employee where he and his employer have accepted the provisions of this act, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, as against his employer at common law, or otherwise, on account of such injury, loss of service, or death: Provided, however, further, that in any case where such employee, his personal representative, or other person may have a right to recover damages for such injury, loss of service, or death from any person other than the employer, compensation shall be paid in accordance with the provisions of this chapter: Provided, further, that after the Industrial Commission shall have issued an award, the employer may commence an action in his own name and/or in the name of the injured employee or his personal representative for damages on account of such injury or death, and any amount recovered by the employer shall be applied as follows: First to the payment of actual court costs, then to the payment of attorneys' fees when approved by the Industrial Commission; the remainder or so much thereof as is necessary shall be paid to the employer to reimburse him for any amount paid and/or to be paid by him under the award of the Industrial Commission; if there then remain any excess, the amount thereof shall be paid to the injured *Page 60 
employee or other person entitled thereto. If, however, the employer does not commence such action within six months from the date of such injury or death, the employee, or his personal representative shall thereafter have the right to bring the action in his own name, and the employer, and any amount recovered shall be paid in the same manner as if the employer had brought the action. The amount of compensation paid by the employer, or the amount of compensation to which the injured employee or his dependents are entitled, shall not be admissible as evidence in any action againt [against] a third party. When any employer is insured against liability for compensation with any insurance carrier, and such insurance carrier shall have paid any compensation for which the employer is liable or shall have assumed the liability of the employer therefor, it shall be subrogated to all rights and duties of the employer, and may enforce any such rights in the name of the injured employee or his personal representative; but nothing herein shall be construed as conferring upon the insurance carrier any other or further rights than those existing in the employer at the time of the injury to or death of the employee, anything in the policy of insurance to the contrary notwithstanding."
Section 8081 (i) — (b) "The term `employee' means every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written," etc.
In McCarley v. Council, 205 N.C. 370 (374), speaking to the subject, it is said: "In Brown v. R. R., 202 N.C. 256, 162 S.E. 613, it was held that the personal representative, in that case the administrator, of a deceased employee, who has accepted from the employer, or from his insurance carrier, compensation for the death of the employee, under the provisions of the North Carolina Workmen's Compensation Act, can maintain in his own name an action to recover of a third person, who by his negligence has caused the death of the employee, damages for such death. For this reason, there was no error in the order of the Superior Court in that case, striking from the answer of the defendant allegations setting up the payment and acceptance of such compensation as a defense or bar to the action. Section 11 of the act expressly provides that in such case, the personal representative of the deceased employee may maintain the action, and that a recovery thereon shall be primarily for the benefit of the employer or of his insurance carrier, who are designated by the statute as the beneficiaries of the action, to the extent of the amount of the compensation paid for the death of the employee. The construction of the statute which supports this holding is not involved in the subsequent appeal in that case. See Brown v. R. R., 204 N.C. 668, 169 S.E. 419. It was approved in Phifer v. Berry, 202 N.C. 388, 163 S.E. 119, and may now be regarded as settled," citing *Page 61 Pridgen and U.S. Fidelity Guaranty Co. v. A. C. L. R. R. Co.,203 N.C. 62, 164 S.E. 325. (p. 375): "The instant case is distinguishable from both the Brown case and the Pridgen case. In the former case, the action was to recover damages for the death of the employee. The action was properly begun and prosecuted by his personal representative. In the latter case, the action was to recover damages for injuries suffered by the employee, which did not result in his death. The action was not begun and prosecuted, as in the instant case, by the employee, who had elected to accept compensation for his injury from his employer or from his insurance carrier, and who by such acceptance is expressly barred by the statute, of the right to recover on the cause of action alleged in the complaint. . . . The order is reversed, without prejudice to a motion which may be made by the plaintiff in the Superior Court that the insurance carrier be made a party plaintiff to the action, if he is so advised. Cunningham v. R. R.,139 N.C. 427, 51 S.E. 1029. If such motion is allowed, and the insurance carrier files a complaint and prosecutes the action, the action may be maintained. If the insurance carrier declines to prosecute the action, the plaintiff may not be without a remedy."
In Thompson v. R. R., 216 N.C. 554 (556), it is written: "The N.C. Workmen's Compensation Act, as amended by chapter 449, Public Laws 1933, prescribes that the rights and remedies granted by the act to an employee to secure compensation for an injury by accident shall exclude all other rights and remedies as against his employer. The statute contains the further provision: `Provided, however, that in any case where such employee, his personal representative, or other person may have a right to recover damages for such injury, loss of service, or death from any person other than the employer, compensation shall be paid in accordance with the provisions of this act.' The provision making the remedy against the employer under the act exclusive does not appear in the clause relating to suits against third persons."
This is an action against third parties for negligence. Under the N.C. Workmen's Compensation Act, negligence is eliminated and an employee may recover from his employer. N.C. Code, supra, sec. 8081 (i), subsec. (f): "`Injury and personal injury' shall mean only injury by accident arising cut of and in the course of the employment," etc.
If the insurance carrier of the employer has paid the award to the employee, he is subrogated, as set forth in sec. 8081 (r), supra. This action is brought by the administrator of the deceased employee charging negligent killing against the defendants, third parties. The plaintiff charges in his complaint the defendants (one not served) with a violation of duty by third persons in not using due care. The complaint charges *Page 62 
that the power lines were on the premises in an "exposed condition and uninsulated," and in this condition charged with "high voltage of electricity" (13,500 volts). "The said wires or power lines were not constructed at a height and in such manner as not to interfere with the construction of said addition to said mill and persons working thereon."
In Mitchell v. Electric Co., 129 N.C. 166 (170), quoting from Joyce on Electric Laws, sec. 445, we find: "`A company maintaining electric wires over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others might have the right to go, either for work, business or pleasure, to prevent injury. It is the duty of the company under such conditions to keep the wires perfectly insulated, and it must exercise the utmost care to maintain them in such condition at such places.'" Helms v. Power Co., 192 N.C. 784; Calhoun v. Light Co.,216 N.C. 256.
In Kiser v. Power Co., 216 N.C. 698 (at page 700), is the following: "A high degree of foresight is required of the defendant because of the character and behavior of electricity which it generates and sells. Shaw v.Public-Service Corp., 168 N.C. 611, 84 S.E. 1010. The defendant's knowledge of its service is supposedly superior to that of its customers. It is not unreasonable, therefore, in view of the dangerous character of the product, to require the `utmost diligence and foresight in the construction, maintenance, and inspection of its plant, wires, and appliances, consistent with the practical operation of the business.'Turner v. Power Co., 167 N.C. 630, 83 S.E. 744. The care required must be commensurate with the dangers incident to the business. And so the law is written. Haynes v. Gas Co., 114 N.C. 203, 19 S.E. 344."
The defendant contends that upon the face of the complaint the Superior Court was without jurisdiction to hear and determine the matter for that, under the law, the N.C. Industrial Commission had the original and exclusive jurisdiction thereof. For the reasons given, we cannot so hold. The complaint sets forth actionable negligence against the defendants, who were third parties. The demurrer ore tenus as to each defendant is overruled. The judgment of the court below is
Reversed. *Page 63