CALVIN DENTON v. SOUTH MOUNTAIN PULPWOOD COMPANY AND HEWITT, COLEMAN & ASSOCIATES, INC.

No. 8310IC155

(Filed 3 July 1984)

Master and Servant § 50.1— workers' compensation—plaintiff not employee of defendant

The evidence established that plaintiff logger was not an employee of defendant pulpwood company at the time of his injury by accident but was an independent contractor where it tended to show that a grading contractor wanted the site in question cleared; defendant's agent contacted plaintiff and other loggers about helping to clear the site; defendant was shown maps of the boundary by defendant's agent and was instructed on the type and length of wood to cut; plaintiff had an independent business as a logger, customarily dealt with defendant as such, and was ordinarily free to sell his wood to anyone; plaintiff was compensated on the basis of the amount of wood he cut; defendant had no right to discharge plaintiff while he was cutting wood on the job site; defendant had not purchased the timber from the grading contractor; and defendant did not retain the right to control the manner in which plaintiff did the work. The fact that plaintiff believed that defendant pulpwood company owned the timber he was cutting and that he was covered by workers' compensation insurance was not determinative of whether an employer-employee relationship existed at the time of his injury.

APPEAL by defendants from order of the North Carolina Industrial Commission entered 15 September 1982. Heard in the Court of Appeals 16 January 1984.

While cutting timber on 7 February 1981, the plaintiff, Calvin Denton, was injured by a chain saw. Plaintiff's claim for benefits under the Workers' Compensation Act was denied by the employer, the defendant South Mountain Pulpwood Company, and its servicing agent, Hewitt, Coleman & Associates, Inc. The matter was brought before the Industrial Commission. The issues raised were whether an injury by accident arising out of and in the course of the plaintiff's employment had occurred and whether an employer-employee relationship existed. Both parties presented evidence; plaintiff attempted to show that he was an employee of the defendant pulpwood company and the defendant attempted to show that plaintiff was an independent contractor.

The deputy commissioner found that the plaintiff had sustained an injury by accident arising out of and in the course of his employment. He also found that the plaintiff was an employee of the defendant South Mountain Pulpwood Company, and that an employer-employee relationship existed at the time of the compensable injury. The defendants appealed the deputy commissioner's decision to the Full Commission.

The Full Commission considered the record in its entirety and found no reversible error. It therefore adopted the opinion and award filed by the deputy commissioner and affirmed the results reached therein. Defendants appeal.

*Hedrick, Feerick, Eatman, Gardner & Kincheloe, by Scott M. Stevenson, for defendant appellants.*

*Byrd, Byrd, Ervin, Blanton, Whisnant & McMahon, P.A., by C. Scott Whisnant, for plaintiff appellee.*

JOHNSON, Judge.

The sole question presented for review is whether the Industrial Commission erred in finding and concluding that the plaintiff was an employee of the defendant, and that an employer-employee relationship existed at the time of plaintiff's injury by accident. It is now well settled that a claimant who seeks to bring himself within the coverage of the Workers' Compensation Act has the burden of proving that the employer-employee relationship existed at the time of the injury. *Lucas v. Stores*, 289 N.C. 212, 221 S.E. 2d 257 (1976); *Durham v. McLamb*, 59 N.C. App. 165,

296 S.E. 2d 3 (1982); *Lloyd v. Jenkins Context Co.*, 46 N.C. App. 817, 266 S.E. 2d 35 (1980). The question as to whether an employer-employee relationship existed at the time of injury is a question of jurisdictional fact, and the finding of this jurisdictional fact by the Industrial Commission is not conclusive, but is reviewable by the appellate court. *Lucas v. Stores, supra; Durham v. McLamb, supra; Lloyd v. Jenkins Context Co., supra.* Thus, it is incumbent upon this Court to review and consider all of the evidence of record on appeal. *Durham v. McLamb, supra.*

The evidence before the deputy commissioner showed the following: The employer-defendant, South Mountain Pulpwood Company (South Mountain) is a wholesale broker of pulpwood. The company has approximately 15 employees who are considered regular employees; these employees are provided workers' compensation benefits based on the volume of timber they cut. The company buys timber, processes it and resells it. Not only will the company purchase timber from the general public, but at times it will buy timber deeds itself in order to cut and process the wood on a particular boundary.

When the company is to cut timber from a boundary that it has purchased, it will have its regular cutters and producers cut the timber and deliver the wood to the yard for processing. The company will also buy cut wood from farmers, the general public or from outside producers. The company purchases wood from approximately 75 outside cutters a year. The company has nothing to do with the timber secured by the outside cutters until they deliver it. The company has no direction or control over these outside cutters and does not provide them with trucks, saws or any other equipment. There are no specific contracts with these cutters; they simply bring wood into the yard as they will.

The plaintiff had dealt with South Mountain Pulpwood Company on his own before the date in question. In 1980, South Mountain paid the plaintiff $31.00 per cord, for about 327 cords of wood, at a gross sum of about $10,000. South Mountain had nothing to do with where that wood was located or cut, and had made no pre-arrangements with plaintiff relative to the cutting of that wood. The plaintiff would simply cut the wood and take it to the defendant wood yard for sale. On those occasions, the plaintiff himself would negotiate and pay the stumpage fee to the owner of

the timber in amounts ranging from $6.00 to $12.00 per cord. Plaintiff would pay the stumpage and his other expenses from the gross sum collected upon sale for the cut wood. Plaintiff estimated his total gross income in 1980 to be about $16,000.

On the evening of Friday, 6 February 1981, a grading contractor telephoned Paul Davis, the president of South Mountain, and informed him that he had a construction site which needed clearing within a week. He told Davis that he would sell the purchasable timber on the site for $8.00 a cord. Mr. Davis told the grading contractor that he did not have enough available employees to cut the timber in such a short period of time, but that he would contact other experienced loggers about the work. He then called the company's Crouse Wood Yard and asked Gordon Brooks to contact some independent cutters who would be "interested in the buying and cutting of a portion" of the boundary.

According to Davis, his conversation with Gordon Brooks was merely to have Brooks let people know of the availability of the work and the fact that it needed to be done fairly quickly. Further, that the company did not contract with any of these independent cutters concerning the cutting of the subject timber; did not provide the cutters on the tract with any equipment; and did not withhold taxes for them. Davis estimated that 15 different crews were out on the particular tract trying to get the timber cut. As to the specific arrangement with plaintiff, Davis testified as follows:

> It was my understanding that Mr. Denton purchased a portion of this wood. I told Mr. Brooks to tell him that it had to be cut within a week if he wanted to cut any of this wood, and that [the grading contractor] would sell it for $8.00 a cord to anyone who would cut it within that time. He said he could cut it within a week.

Davis testified further that South Mountain considered plaintiff to be an outside cutter with respect to the subject tract, no different from any of the other 15 crews who were there on the day in question. South Mountain itself had only one producer there, and that was Mr. Brooks, who was cutting pulpwood. According to Davis, South Mountain had no direction or control over any of the other independent crews, including plaintiff, nor did they have any "power to kick anybody off of that particular

tract." As to control over the manner of cutting the timber, Davis testified on direct examination as follows:

> We have a requirement as to what size, type and length of timber we will buy, but there was no requirement as to how this wood must be cut. Regarding the crews working on that tract cutting heater wood, South Mountain had no say so over them at all. The wood did not have to be brought to our yard, but if it were, we would not purchase it if it was not cut to our specifications.

On cross-examination, Davis admitted that he was not present when Mr. Brooks had the conversation with the plaintiff regarding the tract and that he had no personal knowledge of the terms of their conversation.

> I was not present, but my instructions to Mr. Brooks were specific. I told him the terms of the contract, what was being offered, what the conditions were, that this contract was to be offered to the public, and that anybody could cut it in that week. Mr. Brooks supposedly told [plaintiff] that the tract was being cleared by [the grading contractor].

Davis also stated that the tract was not sold as a boundary, but was offered to anyone who would cut it during that period of time; that he did not "negotiate" this tract, but only knew what the price was per cord; and that he "assembled this information and gave it to anyone as a favor" to the grading contractor.

> The owner of the tract told me what he wanted and what the terms were, and that I was to offer it to the public.

In addition, Davis testified that he personally went to the tract to see that South Mountain's crew did not "get off the boundary," but that his company was not "ultimately responsible" for the clearing of the tract. Further, that he specifically told plaintiff that he could sell the wood that he cut to anyone. The wood that plaintiff did cut prior to his injury was subsequently taken to South Mountain's wood yard in plaintiff's truck. According to Davis, "we were doing Mr. Denton a favor," by taking his wood.

Plaintiff testified that he had dealt with South Mountain on his own in the past, but that on those occasions the company had nothing to do with where the timber was cut or where the bound-

ary was located. On this occasion, however, Mr. Brooks, an employee of South Mountain, called plaintiff on the Friday evening before the accident and asked plaintiff "to help get a boundary out." Plaintiff testified that he had nothing to do with the arrangements being made for the cutting of this particular wood and didn't know where the boundary was located. To the best of plaintiff's knowledge, Mr. Davis had done the negotiations for the tract in question. Plaintiff went to the South Mountain yard on Saturday morning. Mr. Brooks helped him unload some wood from his truck and plaintiff then followed Brooks to the boundary. There he was shown maps of the boundary by Mr. Davis and shown the boundary itself by Mr. Brooks. Plaintiff testified that Mr. Brooks had told him "that he needed this particular boundary cut as soon as possible" and that Mr. Davis gave him "directions relative to where I was to cut and what type of wood I was to cut. I was to cut five-foot lengths of pine. I was told to stay twenty feet back from the line." Further, that "the yard got the pine and somebody got the oak for heater wood. I was instructed to cut pine wood." Plaintiff worked close by Mr. Brooks until he was injured; only he and Brooks were cutting pine, the other crews were cutting heater wood. It was plaintiff's understanding that the wood he cut was to be taken back to the South Mountain wood yard.

Plaintiff also testified that he "had never performed a job such as this for South Mountain Pulpwood in this particular way." On cross-examination plaintiff stated that he customarily did not have "an arrangement" with South Mountain, but would buy wood himself, negotiating directly with the man who owned the timber. On this particular day, plaintiff did not purchase any of this timber.

> On this particular tract, I was not under an obligation to pay the owner for the wood; South Mountain was to take out $8.00 on the cord stumpage fee, to pay the owner. South Mountain would take out $8.00 a cord and hold it out of the wood.

Plaintiff did not know who the owner of this boundary was. Plaintiff admitted that he had not been told directly that South Mountain owned the timber, but stated that he "was under the impression" that it did.

Plaintiff also testified as follows regarding the defendant's ability to control the work done:

Mr. Brooks would not have been able to take any action against me if I had been unable to complete this job because of inattention or not doing my job, unless I hauled some wood to some other yard. If they got me for stealing wood or if I had not gotten the wood out, he would get somebody else.

Additionally, plaintiff admitted that "nobody was forcing me to work on this particular day."

On redirect examination, plaintiff testified as follows regarding his understanding of the contract between South Mountain and himself:

As far as I understood it, my only obligation was to take the wood back to South Mountain. The people cutting heater wood were in no way associated with South Mountain, as far as I know. I had never worked on this basis with South Mountain before. I was under the impression that I was covered with insurance because I thought they bought the boundary. As far as I know, other cutters such as Champion provide coverage if they buy a boundary. I know a sawmill man that does.

Upon the foregoing evidence, the deputy commissioner made, *inter alia*, the following findings of fact relevant to the wood cutting arrangement between South Mountain and plaintiff:

5. Gordon Brooks called the plaintiff by telephone on February 6, 1981 and advised him of the urgent need to cut timber on a construction site. The plaintiff understood he was to furnish his truck and equipment and that the timber he cut was to be taken to the defendant employer's yard. He had never been to the construction site area and did not know the identity of the owner of the land and/or timber.

6. On the morning of February 7, 1981, the plaintiff drove his truck to the defendant employer's yard where he met Gordon Brooks and then followed him to the construction site. When they arrived at the construction site Paul Davis and Gordon Brooks showed the plaintiff maps of the area and Paul Davis instructed the plaintiff to cut pine timber up to 20 feet from

the boundary line. The plaintiff had never worked in this manner with the defendant employer. There were a number of people, including the regular employees of the defendant employer, who were at the site to cut timber.

The deputy commissioner made other findings of fact generally reflective of the evidence presented and then found and concluded that the plaintiff was an employee of the defendant employer on 7 February 1981 and that an employer-employee relationship existed between the parties on that date.

Defendant contends that the evidence shows that plaintiff was not an employee, but rather was an independent contractor under the tests established in *Askew v. Tire Co.*, 264 N.C. 168, 141 S.E. 2d 280 (1965); *Hayes v. Elon College*, 224 N.C. 11, 29 S.E. 2d 137 (1944) and *Lloyd v. Jenkins Context Co., supra.* We conclude that plaintiff has failed to carry his burden of establishing the existence of an employer-employee relationship at the time of his injury by accident. *Lucas v. Stores, supra; Durham v. McLamb, supra; Lloyd v. Jenkins Context Co., supra.* Rather, the evidence, considered as a whole, supports the conclusion that plaintiff was an independent contractor with respect to the employment at issue.

G.S. 97-2(2) defines an employee as one "who is engaged in an employment under an appointment or contract of hire or apprenticeship, express or implied, oral or written . . ." In *Lloyd v. Jenkins Context Co., supra*, this Court set forth several factors considered to be determinative in finding the plaintiff to be an employee, as opposed to an independent contractor. These are as follows:

1. [T]he plaintiff was working for an hourly wage and not for a contract price for a completed job; (2) defendant's own witnesses testified a foreman could instruct the plaintiff in how to do the work. The fact that plaintiff was skilled in his job so that he needed very little supervision does not make him an independent contractor; (3) the plaintiff did not have an independent business as a carpenter; (4) the plaintiff worked full-time for Jenkins; (5) the defendant Jenkins apparently had the right to discharge the plaintiff at any time; and (6) there was no evidence that plaintiff had the right to employ people to assist him in the carpentry work without

the permission of Jenkins . . . We also do not believe the plaintiff's characterization of himself as "self-employed" should govern. It is the evidence as to what the relationship was that determines and not what the plaintiff thought it was.

46 N.C. App. at 819, 266 S.E. 2d at 37.

In *Durham v. McLamb, supra,* this Court applied the *Lloyd* criteria and held the following factors to be determinative of an employer-employee relationship: (1) plaintiff was working for an hourly wage and not for a contract price; (2) plaintiff worked full-time for defendant; (3) defendant could discharge plaintiff at any time; (4) plaintiff did not have a business as an independent contractor. Factors which were not considered determinative were (1) the plaintiff's own assumptions as to the nature of the relationship; (2) the fact that plaintiff did not have to work regular hours; (3) the defendant's failure to withhold taxes from plaintiff's pay; and (4) the fact that plaintiff was skilled in his job so that he needed very little, if any, supervision. 59 N.C. App. at 169, 296 S.E. 2d at 6.

Essentially, plaintiff contends that he was an employee of defendant's on this particular job because he was called by Mr. Brooks and asked to help clear the site; he drove there with Brooks; was shown maps of the boundary by Mr. Davis and instructed on the type and length of wood to cut, as well as the need to stay 20 feet back from the perimeter; he worked nearby to Brooks prior to his injury; and because plaintiff did not negotiate the stumpage fee with the grading contractor. In addition, plaintiff believed, although he was never so instructed, that South Mountain owned the timber rights and that the wood that he cut was to be taken to the defendant's wood yard. In short, in the plaintiff's own words, he "had never performed a job such as this for South Mountain Pulpwood in this particular way" in the past.

The question is, however, whether the peculiar circumstances of this occasion of employment established an employer-employee relationship between plaintiff and defendant on 7 February 1981. We conclude that they did not. It is evident that the findings of the deputy commissioner that an employer-employee relationship had been created with respect to this particular job were er-

roneously based, in large part, on the plaintiff's *subjective impression* of the terms of his "contract" with defendant, rather than upon the objective circumstances disclosed by the bulk of the testimony.

In contrast to *Lloyd* and *Durham*, the plaintiff in the instant case was not working for an hourly wage, but would be compensated for a completed job on the basis of the amount of wood that he cut. Plaintiff had an independent business as a logger or outside cutter or producer and customarily dealt with South Mountain as such. Plaintiff did not work full-time for South Mountain, but was ordinarily free to sell his wood to whichever yard he took it to. South Mountain had no right to discharge plaintiff at any time while he was cutting the wood on the job site at issue; the company had not purchased the site as a boundary from the grading contractor. The fact that plaintiff believed that South Mountain owned the timber and that he was therefore covered by insurance is not determinative. *See Lloyd v. Jenkins Context Co., supra* and *Durham v. McLamb, supra.* Furthermore, Mr. Davis testified that he specifically told plaintiff that the wood could be sold to any wood yard.

Admittedly, plaintiff's case turns upon the terms of an oral contract which was negotiated between plaintiff and defendant's agent, Gordon Brooks, and the failure to present testimony from Mr. Brooks as to what *he* told plaintiff about this job renders resolution of the issue under discussion difficult. However, it is the plaintiff who must carry the burden of proving that an employer-employee relationship existed at the time of injury. *See, e.g., Lucas v. Stores, supra.* Under the tests of *Lloyd* and *Durham*, we cannot say that plaintiff has met his burden with respect to the factors of wages, full-time employment with defendant, defendant's right of discharge and the lack of a business as an independent contractor on the part of plaintiff himself. Nor can it be said that plaintiff has demonstrated that anyone from South Mountain "could instruct the plaintiff in how to do the work." *Lloyd, supra* at 819, 266 S.E. 2d at 37.

The leading case in North Carolina regarding the test for determining whether a worker is an employee or an independent contractor is *Hayes v. Elon College, supra.* In that case, the defendant Elon College wanted to rebuild its electric light

system. The defendant's agent asked a representative of the system's electricity supplier, Duke Power Company, if the company could do the job. The Duke representative stated that his company could not agree to rebuild, but that it employed electricians who did jobs of that kind during their "off" hours, and that he would look into it. The Duke representative then talked with the various electricians and told them of the availability of a job to rebuild a part of the defendant's electric line for the lump sum of $30. When the electricians spoke with defendant's agent, compensation was not mentioned. The electricians agreed to undertake and complete the job if the defendant would furnish a truck and two helpers. After some discussion regarding various aspects of the job, utility poles were shortened so as to clear the electric lines without cutting trees. The claimant was thereafter killed and work temporarily stopped. The defendant notified the other electricians that it wanted the job completed. They secured the assistance of a third electrician and worked each day after five o'clock and on Saturdays and Sundays until the job was completed.

In holding that the deceased was an independent contractor, as opposed to an employee, the court found that the retention by the employer of the right to control and direct the manner in which the details of the work are to be executed, and what the workers are to do as the work progresses is decisive. The court observed that when this right to control appears, it is universally held that the relationship of master and servant or employer and employee is created.

> Conversely, when one who, exercising an independent employment, contracts to do a piece of work according to his own judgment and methods, and without being subject to his employer except as to the result of the work, and who has the right to employ and direct the action of the workmen, independently of such employer and freed from any superior authority in him to say how the specified work shall be done or what laborers shall do as it progresses, is clearly an independent contractor. [Par.] The vital test is to be found in the fact that the employer has or has not retained the right of control or superintendence over the contractor or employee as to details.

224 N.C. at 15, 29 S.E. 2d at 140.

Continuing its analysis, the court listed the elements which "ordinarily earmark a contract as one creating the relationship of employer and independent contractor."

> The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

224 N.C. at 16, 29 S.E. 2d at 140. The court went on to state that the presence of no particular one of these indicia is controlling, nor is the presence of all required. However, they are to be considered along with all other circumstances to determine whether the one employed has that degree of independence necessary to require his classification as independent contractor rather than employee.

As we stated earlier, the evidence clearly showed that plaintiff was engaged in an "independent business, calling or occupation" as a logger; that he was doing a specified piece of work—helping to clear the tract—at a fixed price, upon a quantitive basis according to the total amount of wood he cut, rather than working for hourly wages; that he was not subject to discharge for working in one method as opposed to another; that he was not in the regular employ of South Mountain; that he selected his own time; and that apparently plaintiff was free to use such assistance as he may have thought appropriate to help clear the tract, inasmuch as the grading contractor wanted the wood cleared as quickly as possible.

Turning then to whether South Mountain retained the right of control or superintendence over the plaintiff as to details, we find no sufficient evidence to support such a finding and conclusion on this crucial question. From the testimony received, it appears that the only instructions plaintiff received was that the area needed to be cut, that he was to stay 20 feet back from the line, and that the wood was to be cut in five-foot lengths of pine.

He was given no other instructions, and was not given particular days or times that this was to be done. He was simply told that the wood should be cut as quickly as possible. Plaintiff testified that South Mountain would not have been able to take any action against him if he had been unable to complete his job because of inattention or failure to perform. Mr. Davis testified that South Mountain had no power to "kick anybody off" of that particular tract. South Mountain had not, in fact, purchased the tract as a boundary and it was open to the general public. The company had no control over either the wood or the people cutting the wood.

The foregoing circumstances lead to the conclusion that South Mountain did not retain the right of control or superintendence over the plaintiff in the execution of this work. Plaintiff's testimony that he had never worked for South Mountain under circumstances such as those present on the date in question is not itself sufficient to establish an employer-employee relationship at the time of his injury under either the test of *Hayes* or the test of *Lloyd* and *Durham*. Although it is evident that neither plaintiff nor defendant had had an arrangement with each other quite like this in the past, plaintiff's employment status on 7 February 1981 remained that of an independent contractor.

In conclusion, the Industrial Commission erred in finding and concluding that an employer-employee relationship existed at the time of plaintiff's injury and the order and award of workers' compensation benefits must therefore be

Reversed.

Chief Judge VAUGHN and Judge WEBB concur.