Claim for compensation under the Workmen's Compensation Act for the death of Allen P. Perley, III. At the hearing before the Industrial Commission the plaintiffs' evidence tended to show that on the morning of 17 October, 1946, the decedent, while driving a truck loaded with materials to the defendant Paving Company's concrete mixer, between Black Mountain and Swannanoa, was struck at a railroad crossing by a train of the Southern Railway and instantly killed. The defendant Paving Company was engaged in laying base for highway paving and was using a concrete mixer which was moved as the work progressed. The materials of sand and gravel were hauled from the bins of the Grovestone Sand Company by trucks to the mixer. The distance varied, but at this time was approximately one mile. The defendant used a number of trucks of its own operated by drivers whom it employed at a wage of $1 per hour. Needing additional trucks to expedite the work, the defendant contracted with the decedent, who was a licensed contract hauler, to use his truck in hauling this material and agreed to pay him $1 per batch delivered to the mixer (a batch being the amount of material sufficient for one filling of the mixer). Similarly, the trucks of several other contract haulers were also engaged. The decedent's truck was so arranged that he could haul two batches at the time, making $2 per load as his compensation. He began hauling 10 October, and during the last 4 days before his death on the 17th hauled 76 batches. In hauling the material from the bins to the mixer it was necessary to cross the railroad at grade. Defendant's foreman, offered as a witness by the plaintiffs, testified he hired Perley's truck for this work and did not know of his own knowledge whether Perley drove his truck or not, as the check was on the number of batches the numbered truck delivered, but it seems Perley during this work did drive his own truck. Perley had previously used his truck in hauling sand for the Grovestone people to this job. The defendant's foreman testified he did not give Perley any instructions *Page 481 
(as to the manner of hauling) as "it was understood he would work on same basis as other trucks hired." If Perley had not been familiar with the work he would have given him instructions, which would have been that he take his truck to the sand and gravel bins first, and load his truck, and from there to the cement bin (there were two bins to go under), and from there to the mixer. The trucks were loaded by defendant's employees and unloaded by dumping in the mixer. The mixer started up at 7 a.m. and all trucks were supposed to be loaded and at the mixer by that time. Trucks hauled continually until about 4:30 p.m. In case of rain or breakdown of the mixer the trucks would be knocked off by the mixer foreman. Truck drivers expected to be told by mixer foreman when to quit. This applied to trucks owned by defendant and to those hired, like Perley's. "In case of a breakdown of the mixer so that the (loaded) trucks had to wait pending repairs for several hours, we endeavored to pay $1 per hour to the contract truck owners. The idea was not to pay for the truck but to pay for the truck owner's time while the truck was idle. Trucks did not stop at any set time for lunch, as the mixer ran continually, but were expected to fall out of line two or three at a time for lunch."
The defendant's foreman further testified that he and the superintendent selected the road the trucks would take from the Grovestone plant to the mixer and back. All the trucks went the same route. Before putting the trucks on a new route they selected the best route from existing possibilities, made repairs and tried to call all the drivers together and to give them information and instructions as to the new route to take. This was to prevent confusion. The route followed by decedent the day of his death had been selected after study of available routes. This witness further testified that needing more trucks he had asked Perley if he wanted to put his truck to work. Perley said he did, as he wanted to keep his truck busy, and he put a batch gate in his truck, There was nothing said about who was to drive it. "I hired his truck to haul batches. He could have put a man on it or he could drive it himself or anything he wanted to do." "I had no control over a man that owned his own individual truck." Witness had the right to lay off or discharge those who hauled, had the right to pay them off when no longer needed. Defendant's employees determined the mixture and weight but not the number of batches the truck owner could haul. The type of mixture was determined by the State Highway Department. A man driving his own truck could stop and work on his truck; work half a day and fall out. "We wanted a man to work all he could but could not force him to, not like an employee, hire a man to drive his truck." If a man "didn't get there until 11 o'clock you wouldn't want to run him off when he did get there." If one of defendant's trucks was disabled would *Page 482 
expect the driver to be there and be put to other work temporarily. Defendant's drivers were required to work regular hours, but as to Perley nothing was said about the hours required. He could haul two or three hours and then go haul for somebody else and then came back. Those who operated their own trucks were paid by the batch, and they furnished their own gas and oil. If mixer broke down we endeavored to pay the truck owner $1 per hour while waiting to dump the truck in the mixer. Defendant had right to terminate Perley's hauling contract if unsatisfactory. Some of the other contract haulers on the job hired drivers. Defendant had no control over whether the owner drove or hired a driver. The settlement was for the number of batches hauled by that truck.
The only other witness offered by plaintiffs on this question was a truck driver who drove his own truck on this same job. He also was a licensed contract hauler. He saw Perley there during the time he was hauling; said he followed the route laid out for all the drivers. Witness owned two trucks, one driven by himself and one by his brother. He was usually there when work started as he wanted to get in all the hauling he could, though he was not required to be there. "I could leave when I wanted. I was paid $1 per batch for hauls and not for hours. The mixer broke down at times when I was there during this hauling work. I was paid entirely by the loads or hauls made." If witness hired someone else to drive, witness paid the driver and defendant paid him according to loads hauled. The road used at the time was the most direct route from the cement bins. It was the most convenient way to travel. It was not the only way. "I could follow any road I pleased, but usually defendant set a road and we tried to follow it. That was the best way to get there. No one representing the defendant went along with me." If there was a line of trucks trying to get to the mixer, witness took his turn in line, but sometimes the defendant's drivers would give way to the contract haulers so they could make as many hauls as possible.
The Industrial Commission found the facts and concluded that the decedent's death resulted from injury by accident arising out of and in the course of employment by the defendant Paving Company, and made award of compensation therefor.
On appeal to the Superior Court the findings of fact and conclusions of the Industrial Commission were affirmed, and from judgment in accord therewith defendants appealed.
The case turns on whether the decedent at the time of his injury and death was an employee of defendant Paving Company, or an independent contractor. Defendants' appeal is based upon the ground that the evidence offered in support of the claim conclusively establishes the relationship between decedent and the defendant as that of an independent contractor rather than an employee, and that the findings and conclusions of the Industrial Commission, affirmed by the Superior Court, are not supported by the evidence.
The rule declared by the statute and uniformly upheld by this Court that the findings of fact made by the Industrial Commission, when supported by any competent evidence, are conclusive on appeal, does not mean, however, that the conclusions of the Commission from the evidence are in all respects unexceptionable. If those findings, involving mixed questions of law and fact, are not supported by evidence the award cannot be upheld.Beach v. McLean, 219 N.C. 521, 14 S.E.2d 515; Thomas v. Gas Co.,218 N.C. 429, 11 S.E.2d 297. The generally accepted definition of and independent contractor is that he is one who exercises an independent employment and contracts to do certain work according to his own judgment and method, without being subject to his employer except as to the result of his work. Smith v. Paper Co., 226 N.C. 47, 36 S.E.2d 730; Greerv. Construction Co., 190 N.C. 632, 130 S.E. 739; Moore v. Sales Co.,214 N.C. 424, 199 S.E. 605. In Hayes v. Elon College, 224 N.C. 11,29 S.E.2d 137, the distinction between an employee entitled to benefits under the Workmen's Compensation Act and an independent contractor was discussed by Justice Barnhill with citation of numerous authorities. The general principle of law is well settled, but its application to individual cases frequently presents difficulties.
The evidence adduced before the Industrial Commission by the claimants in the case at bar upon which the rights of the parties must depend has been hereinbefore set out at some length. This evidence is derived from the testimony of the two witnesses offered by plaintiffs, one of these being the defendant's foreman, and the other a contract hauler engaged at the same time in work similar to that of the decedent. The testimony of defendant's superintendent, offered by defendant, was of like import.
After a careful analysis of this testimony, we reach the conclusion that the evidence characterizes the relationship of the decedent to the defendant, at the time of the injury, as that of an independent contractor, and not an employee within the purview of the Workmen's Compensation Act (G.S., 97-2 (b)), and that the findings and conclusions of the Industrial Commission to the contrary are not supported by the evidence.
The facts upon which the decisions were based in Gulf Refining Co. v.Brown, 93 F. (2), 870; Burruss v. Logging Co., 31 P.2d 263; Burnett *Page 484 v. Ind. Com., 63 N.E. (2), 240; and Ridgdell v. School Board, 16 So. (2), 55, cited by plaintiffs, are distinguishable from the facts in the case at bar and may not be held controlling here.
The action of the court below in overruling defendants' exceptions and affirming the award must be held for error, and the judgment
Reversed.