MRS. SARAH McCRAW, WIDOW, AND MRS. MARY McCRAW PREVATTE, DAUGHTER OF JOSEPH E. McCRAW, DECEASED EMPLOYEE, v. CALVINE MILLS, INC., EMPLOYER; LUMBERMEN'S MUTUAL CASUALTY COMPANY, CARRIER, AND S. J. AND HOMER GADDY.

(Filed 2 May, 1951.)

**1. Master and Servant § 4a—**

A person undertaking a specific job by contract under which he retains control of the manner of doing the work, and the hiring, firing and payment of persons working under him, without being subject to the contractee except as to the result of the work, is an independent contractor, but if the contractee retains the right of control over the manner or method of doing the work, whether exercised or not, the contract creates the relationship of employer and employee.

**2. Master and Servant § 55d—**

Findings of fact of the Industrial Commission are conclusive on appeal when supported by competent evidence.

McCraw v. Mills, Inc.

**3. Master and Servant § 39b—Evidence held to show that decedent was employee of independent contractor.**

The evidence tended to show that the individual defendants contracted to paint the corporate defendant's mill for a specified price in accordance with certain specifications, the corporation being interested only in the result of the work, the individuals retaining complete control over the employment, wages and firing of their employee-painters and the time, place and manner of doing the work, with the exception that the corporation designated the times at which the interior might be painted so as not to interfere with the operation of the mill, and advanced in a lump sum weekly an amount sufficient to meet the payroll, including an amount for the individual defendants which they charged against their anticipated profits. *Held:* The individual defendants were independent contractors liable under the Compensation Act for fatal injury to a painter resulting from an accident arising out of and in the course of the employment, and there is no evidence to sustain a finding that such painter was an employee of the corporate defendant.

**4. Same—**

Testimony of a partner as to his interpretation of the results which might follow conjectural situations under the contract cannot support a finding that the contract created the relationship of employer and employee rather than that of employer and independent contractor when such partner had no direct dealings in execution of the contract and had no personal knowledge thereof except as shown by the writings which disclosed an independent contract which was so treated by the parties in its practical interpretation in the performance of the work, since the question is not what the witness thought the contract meant but what was agreed upon.

**5. Master and Servant § 4a—**

The fact that the contractee retains the right to alter the specifications in immaterial aspects or provide for additional work for extra pay does not change the relationship of the parties from that of employer and independent contractor to that of master and servant.

Appeal by plaintiffs and defendant Homer Gaddy from *Sink, J.,* March Term, 1951, of Mecklenburg. Affirmed.

This was a claim under the Workmen's Compensation Act by the dependents of Joseph E. McCraw for compensation for his injury and death by accident arising out of and in the course of his employment by defendant Calvine Mills, Inc., or in the alternative by the defendants Gaddy, in the event the latter be determined to be independent contractors under contract with defendant Mills, Inc.

The Industrial Commission found that decedent suffered fatal injury by accident arising out of and in course of employment by defendant Mills, Inc., and that defendants Gaddy, self-insurers, though regularly employing five or more persons, were not independent contractors or employers of decedent under the circumstances here disclosed. Compensa-

tion was awarded the claimants as against defendant Mills, Inc., only, and not against defendants Gaddy. Defendant Mills, Inc., and the plaintiffs appealed to the Superior Court. In the Superior Court the Judge reversed the ruling of the Industrial Commission, being of opinion that there was no competent evidence to support the finding and conclusion that decedent was an employee of defendant Mills, Inc., at the time of his injury. The Judge also held that all the evidence was to the effect that decedent's injury arose out of and in the course of his employment by defendants Gaddy, and accordingly remanded the case to the Industrial Commission for an award in accord with his judgment.

The plaintiffs and defendant Homer Gaddy appealed.

*Helms & Mulliss and James B. McMillan for plaintiffs, appellants.*
*Taliaferro, Clarkson & Grier for defendant Homer Gaddy, appellant.*
*Smathers & Carpenter for Calvine Mills, Inc., and Lumbermen's Mutual Casualty Company, defendants, appellees.*

Devin, J. The question presented is whether under the evidence shown by the record Joseph E. McCraw, the decedent, at the time of his death by accident, was an employee of Calvine Mills, Inc., or was an employee of defendants Gaddy while the latter were engaged in work for the corporate defendant under an independent contract. The Industrial Commission found he was an employee of defendant Mills, Inc., while the Judge of the Superior Court adopted the contrary view, holding that decedent was an employee of defendants Gaddy as independent contractors, and not an employee of defendant Mills, Inc.

The definition of independent contractor and the distinction to be drawn between the relationship of independent contractor and that of employee, in cases arising under the Workmen's Compensation Act, have been frequently stated by this Court. *Scott v. Lumber Co.,* 232 N.C. 162, 59 S.E. 2d 425; *Perley v. Paving Co.,* 228 N.C. 479, 46 S.E. 2d 298; *Brown v. Truck Lines,* 227 N.C. 299, 42 S.E. 2d 71; *Smith v. Paper Co.,* 226 N.C. 47, 36 S.E. 2d 730; *Hayes v. Elon College,* 224 N.C. 11, 29 S.E. 2d 137; *Beach v. McLean,* 219 N.C. 521, 14 S.E. 2d 515; *Gadsden v. Craft,* 173 N.C. 418, 92 S.E. 174; *Denny v. Burlington,* 155 N.C. 33, 70 S.E. 1085. In its simplest form an independent contractor may be said to be one who exercises an independent employment and contracts to do certain work according to his own judgment and method, without being subject to his employer except as to the result of his work. *Perley v. Paving Co.,* 228 N.C. 479, *supra.* When one undertakes to do a specific job under contract and the manner of doing it, including employment, payment and control of persons working with or under him, is left entirely to him, he will be regarded as an independent contractor unless

the person for whom the work is being done has retained the right to exercise control in respect to the manner in which the work is to be executed. *Denny v. Burlington,* 155 N.C. 33, 70 S.E. 1085. The test is whether the party for whom the work is being done has the right to control the worker with respect to the manner or method of doing the work, as distinguished from the right merely to require certain definite results conforming to the contract. If the employer has right of control, it is immaterial whether he actually exercises it. *Scott v. Lumber Co.,* 232 N.C. 162, 59 S.E. 2d 425.

As the findings of fact made by the Industrial Commission must be held conclusive on appeal to the Superior Court and in this Court, if supported by competent evidence (*Vause v. Equipment Co., ante,* 88, 63 S.E. 2d 173), a careful examination and analysis of the testimony presented to the Industrial Commission is in order. The evidence shows these material facts: The defendant Calvine Mills, Inc., is and was at the times referred to engaged in the manufacture of cloth. Desiring to have the mill building painted, it accepted the written proposal of S. J. Gaddy to do this work on the terms set out in the following letter: "For the sum of ten thousand and five hundred dollars ($10,500) we propose to paint the Calvine Mill interior and exterior in accordance with the specifications drawn up by the DuPont Paint Company. You are to furnish all materials, drop cloths, and rigging. We are to furnish all brushes and skilled labor. As work progresses you are to advance weekly payroll. We will assume all responsibility and do A-1 job. Thanking you for this opportunity of quoting you and hoping to be awarded this work. (Signed) S. J. Gaddy."

The defendant Mills, Inc., was to make advancements on the contract to enable defendants Gaddy to meet their payrolls. The mill being in operation, it was understood that the painting on the inside of the building should be done at such times and places as would not interfere with the operation of the mill, and that this would be done on Saturdays and Sundays when the mill was usually closed. S. J. Gaddy and his son Homer Gaddy, who became interested with him, carried out this painting contract, employing a number of painters ranging from four on some days to twenty or more on week ends. Homer Gaddy kept the time of the employed painters, and each week obtained from defendant Mills, Inc., in a lump sum an amount sufficient to pay the wages of the workmen including an amount for the two Gaddys which they charged against their anticipated profits on the contract. The decedent McCraw was one of the painters on the job, employed by and carried on Gaddys' payroll, and had been so employed four or five weeks before his death. S. J. Gaddy had been for many years a painting contractor and painter but had retired from active work until he made this contract. Homer Gaddy had

been engaged for a number of years in the painting business with his son, brother and cousin.

S. J. Gaddy testified that he made the contract to paint the mill according to the specifications for $10,500, and to furnish all the labor, brushes and ladders; that he and Homer Gaddy did the job according to specifications in a satisfactory manner and were paid the contract price. "He (the mill superintendent) did not give us any orders or instructions. . . . There was no change in the specifications except when we got through the superintendent had an additional room and asked us about it. That was additional work and we got paid for it." On request and as an accommodation a certain pipe in the mill was painted red. "Nobody at the mill told us how to hire or fire; they never told us how much to pay anybody; they never told us how to work and how not to work. My son and I exercised all the control over employees. Nobody else controlled them in any way. I did not recognize any right on the part of the mill to give any different orders or instruction other than that contained in the letter, other than the specifications we had to work by. Other than that I did not recognize any right on the part of the mill to give me further orders."

Homer Gaddy testified for the plaintiffs that he participated with S. J. Gaddy in making the estimates for the work. This was based on the plans and specifications furnished by defendant Mills, Inc., and it was to be done in accordance with specifications drawn up by the DuPont Paint Company. He said the mill was to furnish the paint and all materials, including drop cloth and rigging, while he and S. J. Gaddy were to furnish skilled labor and all brushes and ladders. "We assumed all responsibility and were to do an A-1 job." He testified that in compliance with the contract he and his father employed the painters, put them on "our" payrolls and paid them. Neither of them was on the mill's payroll, nor were any of the painters they employed. "The mill didn't know who was on our payroll." Joseph McCraw, the decedent, had previously worked for S. J. Gaddy on a number of occasions. No one at the mill knew anything about his employment. Neither S. J. Gaddy nor Homer Gaddy used a brush. They directed the work of the painters.

Homer Gaddy further testified: "We employed the men and told them where to work, when to begin work, what place to work at, what work to do. We exercised all the control over the men that was exercised while they were at work. Nobody at the mill attempted to tell us what men we worked. We decided where the men were to work. The superintendent would tell me where I could work. He would tell us we could work in a certain room. I told my men when to go to work, and how to do the work, and what to do, and then I told them when to quit, and I kept their time

and paid them, and the mill didn't care whether we worked any single men or we didn't work a certain man. The only thing the mill looked for was an A-1 job finished in the agreed time. They weren't caring whether we worked three men, six men or twenty men. We worked as many men as we wanted to. No one had anything to do with that but me and my father. . . . We had the right to fire these men if they didn't work properly, and no one but my father and myself had the right to fire them. My father and I were the men that agreed with these men as to the rate of pay. We agreed with each painter as to his rate of pay. . . . The only instructions we got from the mill was the plans and specifications, and they would tell us from one day to the next what sections of the mill we could work in. They never told us who to work, or when to work there."

This evidence produced by the plaintiffs would seem to satisfy in all respects the definition of an independent contractor. *Hayes v. Elon College, supra.* S. J. Gaddy and Homer Gaddy were engaged in a separate and independent business, to wit, that of painting contractors, which required independent use of the special skill, knowledge and experience incident to that business. They were not in the employ of the mill, except for this contract, and were not subject to discharge as such. They were free to use such workmen painters and as many or few as they saw fit, with full control over them as to hiring and firing, wages and hours, times and places. S. J. Gaddy and Homer Gaddy were subject only to the terms of the contract and the specifications forming a part thereof. Any changes in the contract or specifications were matters of agreement between the contracting parties, and any additional work was to be done and paid for as should be agreed upon.

But the plaintiffs rely for reversal of the ruling below upon certain other testimony given by the witness Homer Gaddy, over objection, which we quote, as follows:

"Q. As far as you were concerned, Mr. Gaddy, the mill superintendent or the mill owner or the general manager, they had the right to make requests of you as to the manner in which you did the work, didn't they? A. Absolutely.

"Q. As far as you were concerned in doing that job, you recognized their right to tell you how to do it? A. Absolutely.

"Q. And they did have the right under your agreement to prescribe the way and manner in which you did that job? A. Yes, sir.

"Q. Or make changes in the specifications as they saw fit as the job went along? A. Yes, sir.

"Q. Or tell you to knock off work in a particular room so they could do whatever they wanted to do there? A. Yes, sir.

"Q. Or to prescribe the hours that your men would be permitted to paint overhead before they would resume operation of the machinery? A. Yes, sir."

It will be noted, however, that Homer Gaddy did not make the contract though he figured with S. J. Gaddy, his father, as to the cost and price proposed, and afterward became a partner with S. J. Gaddy in supervising the performance of the contract and sharing in the profits. He testified he had had no direct dealings with any of the mill officials, except to obtain weekly checks with which to pay his painters for their work, and that the letter of S. J. Gaddy and its acceptance by the mill, and the plans and specifications called for constituted the entire contract. He had no personal knowledge of the contract except as shown by these writings. Hence his quoted testimony elicited under examination would seem to set forth merely what he regarded as the effect of the contract, and his interpretation of the results which might follow conjectural situations. The question posed for us is to be determined not by what this witness thought the contract meant, but by what was agreed upon. *Overall Co. v. Holmes,* 186 N.C. 428, 119 S.E. 817. That the contracting parties could alter the specifications in immaterial respects or provide for additional work for extra pay would not change the relationship of the parties or make the employees of S. J. and Homer Gaddy employees of the mill. The fact that no control over the details of the work or of the employees of Gaddy was in fact exercised by the mill would indicate the practical interpretation of the contract by the parties thereto as one providing for an independent employment. *Smith v. Paper Co., supra.*

We conclude that the portions of the testimony of Homer Gaddy relied on by the plaintiffs, if competent, are not controlling so as to give decisive character to the relationship of the parties, and that the evidence as a whole presents an unmistakable picture of an independent contract for painting defendant's mill, and that the decedent at the time of his accidental injury and death was not an employee of defendant Calvine Mills, Inc., but of the defendants Gaddy.

The judgment of the Superior Court is

Affirmed.